IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JASON HUTNICK,

    Plaintiff,                         No. CIV S-08-1171 DAD

    vs.

MICHAEL J. ASTRUE,            <u>ORDER</u>
Commissioner of Social Security,

    Defendant.
_____/

        This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion is granted, defendant's motion is denied, the decision of the Commissioner of Social Security (Commissioner) is reversed, and the matter is remanded for further proceedings consistent with this order.

**PROCEDURAL BACKGROUND**

        Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act (Act) and Supplemental Security Income (SSI) under Title XVI on July 13, 2005, claiming disability based on seizure disorder, head injury, and migraines, with an alleged onset date of May 1, 2005. (Transcript (Tr.) at 118-24, 133-42.) The application was denied initially in November 2005 and upon reconsideration in March 2006. (Tr. at 73-76, 79-90, 91-97.) A

hearing was held before an administrative law judge (ALJ) on September 12, 2007. (Tr. at 105-06, 28-72.) Plaintiff, represented by counsel, testified at the hearing, as did plaintiff's mother and a vocational expert. (Tr. at 28-29, 53.) In a decision dated October 26, 2007, the ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010 (See: Disco/pg.2[1]).
>
> 2. The claimant has not engaged in substantial gainful activity since May 1, 2005, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).
>
> 3. The claimant has the following severe impairments: History of a closed head injury, Epilepsy (Major Motor Seizures), Organic Mental Disorders (Chronic Brain Syndrome) and residuals of double vision, and memory problems (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Due to his seizure activity, he should avoid even moderate exposure to hazards. He should not climb ladders, ropes or scaffolds. He is able to understand, remember, and carry out simple instructions with limited public contact.
>
> 6. The claimant is capable of performing his past relevant routine janitor work. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

(Tr. at 14-27.) The ALJ concluded that the claimant had not been under a disability, as defined in the Act, from May 1, 2005 through the date of the decision. (Tr. at 27.)

/////

---

[1] The ALJ's reference to "Disco" appears to refer to the "DISCO DIB Insured Status Report." (Tr. at 127-28.)

On March 28, 2008, the Appeals Council denied plaintiff's request for administrative review of the ALJ's decision. (Tr. at 2-5.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on May 28, 2008.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal

/////

Regulations, Sections 404.1520 and 416.920.  Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).
The five-step process has been summarized in the Ninth Circuit as follows:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff advances the following three arguments in support of his motion for summary judgment:  (1) the ALJ erred in rejecting the opinions of examining physician Dr. Brooker without a legitimate basis for so doing; (2) the ALJ erred in failing to credit both plaintiff's and third-party testimony as to the nature and extent of plaintiff's functional limitations; and (3) the ALJ failed to properly assess plaintiff's residual functional capacity, failed to properly credit the testimony of the vocational expert in response to the hypothetical question that accurately reflected plaintiff's limitations, and failed to inquire of the vocational

/////

expert whether his testimony conflicted with the Dictionary of Occupational Titles as required. Each of these arguments is addressed below.

**I. Residual Functional Capacity & The ALJ's Treatment of the Consultative Opinions**

A claimant's residual functional capacity (RFC) is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). The assessment of a claimant's RFC must be "based on all the relevant evidence in [the claimant's] case record." Id. See also Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001). When a claimant requests an administrative hearing, it is the duty of the ALJ to determine the claimant's RFC from the record. 20 C.F.R. § 404.1546(c).

In the present case, the ALJ found that plaintiff has the following RFC arising from his history of a closed head injury, epilepsy with major motor seizures, organic mental disorders (chronic brain syndrome), residuals of double vision, and memory problems: the ability to perform a full range of work at all exertional levels with nonexertional limitations that require him to avoid even moderate exposure to hazards and any climbing of ladders, ropes or scaffolds and limits him to jobs that require the ability to understand, remember, and carry out simple instructions with limited public contact. In coming to this conclusion the ALJ appears to have relied in large part upon a consultative psychological evaluation by Psychological Intern Michael Molyn, Psy. D. (tr. at 205-09.) Based upon this assessed RFC, the ALJ concluded that plaintiff is able to perform his past relevant routine janitor work as well as other jobs available in the national activity and was therefore not disabled. (Tr. at 25-26.)

Plaintiff was referred by the Department of Social Services (DSS), Disability Evaluation Division, to Valley Psychological Services for a psychological evaluation which was performed on September 23, 2005, by Psychological Intern Michael Molyn. In September of 2007, plaintiff was referred by his counsel to Alan E. Brooker, Ph.D., ABPP for an evaluation of any cognitive deficits relevant to his application for Supplemental Social Security Income

/////

benefits.[2] The only professional opinions regarding plaintiff's cognitive deficits and the limitations placed upon him as a result thereof, came from these two consultative examiners.

Plaintiff contends that the ALJ improperly rejected the opinion of Dr. Brooker, a Board Certified Clinical Neuropsychologist, in favor of the opinion of a Psychological Intern, Dr. Molyn. In this regard, plaintiff argues that as an intern Dr. Molyn was not a licensed or certified psychologist when he prepared the report which the ALJ essentially adopted. Plaintiff argues that Dr. Molyn was not an acceptable medical source as defined in 20 C.F.R. § 404.1513(a)(2).[3] The Commissioner implicitly concedes this point, arguing instead that Dr. Molyn qualified as being among "other medical sources" under 20 C.F.R. § 404.1513(d), which the ALJ could properly rely upon, even to the extent of rejecting the conflicting opinion from an acceptable medical source such as Dr. Brooker.

Of course, the weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). In order to meet the burden of setting forth specific, legitimate reasons for giving less weight to the controverted opinion of an examining physician, the ALJ must set out a detailed and thorough summary of the facts and conflicting clinical evidence, explain his interpretation of the evidence, and make specific findings. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). In developing the record and interpreting the evidence, the ALJ must

---

[2] What makes this a somewhat unusual case is that there were no treating physician opinions. It appears that at the time he applied for benefits, plaintiff had no health insurance. (Tr. at 139.) Accordingly, his treatment records were limited to those provided by the Sacramento County Clinic where he would see different doctors and receive prescriptions for his seizure medication, Tegretol. (Tr. at 213-29.)

[3] The four-and-a-half page psychological report prepared upon the referral from the Department of Social Services was signed only by "Michael Molyn, Psy. D, Psychological Intern" although it reflected a blank signature line for a "Travis H. Owens, Psy. D, Supervising Clinical Psychologist." (Tr. at 209.) Plaintiff argues that Dr. Molyn performed the evaluation unsupervised. The Commissioner does not contest this assertion.

explain why any significant probative evidence has been rejected and must reach a decision supported by substantial evidence. Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003); Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

The court finds that the ALJ erred in his treatment of the opinion of consultative examiner Dr. Brooker, particularly in light of the nature of the consultative report that the ALJ in large part relied upon in his RFC assessment. As noted, the only opinions before the ALJ were those of the two consultative examiners. Dr. Brooker, however, is a specialist who is Board Certified in Clinical Neuropsychology and is also a certified rehabilitation counselor. (Tr. at 232.) "The fact that a medical opinion is from an acceptable medical source is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an acceptable medical source because . . . 'acceptable medical sources' are the most qualified health care professionals." Stewart v. Astrue, 319 Fed. Appx. 649, 650-651, 2009 WL 725048, * 1 (9th Cir. 2009)[4] (quoting SSR 06-03p, 2006 WL 2329939, at *4). Moreover, the reports of "other medical sources" such as Dr. Molyn are afforded no inherent deference under the regulations, and there is not even a "requirement that the Secretary accept or specifically refute such evidence." Bunnell v. Sullivan, 912 F.2d 1149, 1152 (9th Cir. 1990), rev'd en banc on other grounds, 947 F.2d 341 (9th Cir. 1991).[5] Finally, the opinion of a specialist such as Dr. Brooker is to be given greater weight than that of a generalist. 20 C.F.R. § 404.1527(d)(5); see also Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004), Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

The court is mindful that it must consider the record as a whole, considering both the evidence that supports and the evidence that detracts from the Commissioner's decision and

---

[4] Citation to this unpublished decision is appropriate under Ninth Circuit Rule 36-3(b).

[5] This is not a case where the "other medical source" evidence was important in terms of contradicting or supporting medical opinion regarding the severity of plaintiff's impairment. See SSR 06-03p, 2006 WL 2329929, at *3. Rather, here the "other medical source" evidence was, in reality, the only evidence relied upon by the ALJ in assessing plaintiff's RFC.

that it is not the court's role to re-weigh the evidence or substitute its own judgment for the Commissioner's.  Winans v. Bowen, 853 F.2d 643, 644-45 (9th Cir. 1987).  Moreover, if there is conflicting evidence supporting a finding of either disability or nondisability, the ALJ may resolve the conflict so long as there is "more than one rational interpretation of the evidence." Sprague, 812 F.2d at 1230.  See also Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ.").  Here, however, not only did the ALJ essentially adopt the opinion of a psychological intern over that of a Board Certified Clinical Neuropsychologist, he relied on what appears to be an inferior report over a more exhaustive exam and report.  In this regard, Dr. Molyn's report does not reveal how long he spent with plaintiff, though it is clear that his evaluation was completed in an afternoon.  (Tr. at 205.)  Dr. Molyn's report is four and half pages long and contains relatively brief sections addressing plaintiff's history, social functioning, daily activities, mental status, the intern's clinical interview of plaintiff and the intern's observations, test results from the WAIS-III, Wechsler Memory Scale-III, Bender Gestaltand TRAILS A and TRAILS B, the intern's mental functioning assessment and a brief diagnosis.  On the other hand, Dr. Brooker's report is much more exhaustive and reflects that he spent six hours with plaintiff on September 4, 2007.  (Tr. at 232.)  The report also reflects that Dr. Brooker administered more exhaustive testing of plaintiff than that used by Dr. Molyn.  (Tr. at 233.)  As a result, Dr. Brooker concluded that

> Review of Dr. Owens'[6] evaluation provided a hint of the cognitive deficits that became more evident on more extensive testing within the current evaluation.  Specifically, with the administration of a comprehensive battery of neuropsychological test, the entirety of the current evaluation reveals significant cognitive residuals primarily reflected in impaired cognitive processing speed, distractibility and impaired memory function, as well as associated psychiatric residuals significantly affecting social interactions.

---

[6] This reference is to the report signed only by intern Dr. Molyn.  See fn. 3, supra.

> Specifically, Mr. Hutnick displays impaired cognitive processing speed that negatively affects his ability to process anything beyond a very few elements of relatively simple information at one time. Moreover, slowed cognitive processing speed likely contributes to the impaired memory function evidenced in the current evaluation results.

(Tr. at 245-46.)

Based upon this more complete examination and testing, Dr. Brooker concluded that, although motivated, plaintiff had either poor or no ability to make most occupational, performance, or personal-social adjustments necessary to perform work and that plaintiff could not manage benefits in his own best interests. (Tr. at 243-50.) The court is compelled to note that Dr. Brooker's assessment, unlike that of the other consultative exam, is much more consistent with the obvious aspects of the record. That record established that plaintiff had suffered a severe traumatic brain injury at the age of twelve, was thirty-one years old at the time of the hearing, had always lived with his mother and had held at least six different jobs (including utility worker, groundskeeper, janitor and gas station cashier) between 1999 and 2005 but was unable to hold any of them longer than eleven months before being fired or quitting for fear of being fired. (Tr. at 144-45, 196-97.)

The ALJ, however, accorded Dr. Brooker's assessment of plaintiff's mental functioning "a minimal amount of weight" because his ratings of plaintiff were allegedly not supported by "his own findings." (Tr. at 19.) The ALJ did not elaborate a great deal on the basis for this conclusion, other than to note that during the consultative exam Dr. Brooker had found plaintiff to be without obvious visual or perceptual difficulties, slow but generally task-appropriate, cooperative, motivated, frustrated with tasks at times but otherwise emotionally well-controlled, distracted intermittently but easily redirected, and alert though mildly disoriented as to time. (Id.) The court fails to understand how any of these finding are inconsistent with Dr. Brooker's assessment of plaintiff's mental functioning. The only other factor that the ALJ cited in according this assessment minimal weight was that Dr. Brooker was not plaintiff's treating

psychologist but rather examined plaintiff for six hours at the request of plaintiff's counsel. (Tr. at 19.) As Dr. Brooker's detailed report makes clear, however, he reviewed all of plaintiff's available medical/psychological records including the consultative report of Dr. Molyn and rendered a comprehensive evaluation and opinion that took all of those records and test results into account. (Tr. at 232-50.) Of course,"[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them" and "[a]n examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner." Lester, 81 F.3d at 832.

After careful consideration of the record, the court finds that the ALJ failed to articulate proper reasons for not crediting Dr. Brooker's opinion. Plaintiff is entitled to summary judgment on this claim. On remand, the ALJ must reconsider Dr. Brooker's opinions and either credit them or articulate proper reasons for rejecting them.

**II. Plaintiff's and Third-Party's Testimony and Statements**

Plaintiff argues next that the ALJ failed to properly credit plaintiff's testimony and the third-party testimony of his mother as to the nature and extent of plaintiff's functional limitations.

It is well established that once a claimant has presented medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of his or her symptoms merely because the symptoms are unsupported by objective medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Indeed, "'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" Light, 119 F.3d at 792 (quoting Smolen, 80 F.3d at 1281). In evaluating a claimant's subjective testimony regarding the severity of his symptoms, the ALJ may, of course, consider the presence or absence of supporting objective medical evidence, along with other factors. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc); see also Smolen, 80 F.3d at 1285.

However, "'the ALJ can reject the claimant's testimony about the severity of [his or] her symptoms only by offering specific, clear and convincing reasons for doing so.'" Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting Smolen, 80 F.3d at 1281). Thus, absent affirmative evidence of malingering, the reasons for rejecting a claimant's testimony must be clear and convincing. Morgan, 169 F.3d at 599.

It is also well established that social security claimants need not be "utterly incapacitated to be eligible for benefits." Fair, 885 F.2d at 603. See also Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). In general, the Commissioner does not consider "activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs" to be substantial gainful activities. 20 C.F.R. § 404.1572(c). See also 20 C.F.R. § 404.1545(e).

The testimony of lay witnesses, including a claimant's family members, reflecting their own observations of how the claimant's impairments affect his activities must be considered and discussed by the ALJ. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006); Smolen, 80 F.3d at 1288; Sprague, 812 F.2d at 1232. Friends and family members who see the claimant on a daily basis are competent to testify as to their observations. Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). If the ALJ chooses to reject or discount the testimony of a lay witness, she must give reasons germane to each particular witness. Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919. The mere fact that a lay witness is a relative of the claimant cannot be a ground for rejecting the witness's testimony. Regennitter, 166 F.3d at 1298; Smolen, 80 F.3d at 1289. Nor does the fact that medical records do not corroborate the testimony provide a proper basis for rejecting such testimony. Smolen, 80 F.3d at 1289. It is

1  especially important for the ALJ to consider lay witness testimony from third parties where a
2  claimant alleges symptoms not supported by medical evidence in the file and the third parties
3  have knowledge of the claimant's daily activities.  20 C.F.R. § 404.1513(e)(2); SSR 88-13.
4  	Questions of credibility and the resolution of conflicts in the testimony are usually
5  deemed functions solely of the Commissioner, Morgan, 169 F.3d at 599.  Determination of
6  credibility is a function of the ALJ acting on behalf of the Commissioner.  Saelee v. Chater, 94
7  F.3d 520, 522 (9th Cir. 1996).  In general, an ALJ's assessment of credibility should therefore be
8  given great weight.  Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985).  Ordinary techniques
9  of credibility evaluation may be employed, and the adjudicator may take into account prior
10 inconsistent statements or a lack of candor by the witness.  Fair, 885 F.2d at 604 n.5.
11 	In the present case, the record establishes that plaintiff's medically determinable
12 impairments could reasonably be expected to produce plaintiff's symptoms of double vision,
13 cognitive defects such as impaired information processing speed and impaired memory function,
14 inability to deal with work stresses, inability to relate to co-workers and supervisors, and inability
15 to maintain concentration and attention.  Accordingly, the ALJ was required to evaluate the
16 intensity, persistence, and limiting effects of plaintiff's symptoms to determine the extent to
17 which they limit his ability to do basic work activities.
18 	As required, the ALJ here apparently made findings on plaintiff's credibility.  In
19 this regard, the ALJ generally found that "plaintiff's statements concerning the intensity,
20 persistence, and limiting effects" of his symptoms "are not entirely credible."  (Tr. at 23.)  In
21 making this finding the ALJ apparently relied upon the 2005 DDS finding that plaintiff was not
22 disabled, the fact that his seizures appeared to be controlled by medication, he had completed two
23 welding courses at a junior college and became certified, the alleged inconsistency in plaintiff's
24 reports that his medication made him drowsy while neither the consultative examiners or the ALJ
25 noted such drowsiness, and the lack of evidence that plaintiff had contacted the California
26 /////

Department of Vocational Rehabilitation to determine if he could perform in a sheltered workshop setting or with a job coach. (Tr. at 24-25.)

The court notes at the outset that there is no suggestion of malingering in this case. Plaintiff sought and obtained employment several times over a six year period with the assistance of his mother, but was unable to hold any of those jobs for more than a few months. The court has carefully reviewed the ALJ's general references to plaintiff's testimony and statements and that of his mother as well. (Tr. at 20-21, 23-24.) The ALJ failed to provide clear and convincing reasons for rejecting any of the lay testimony or statements. The inconsistencies asserted by the ALJ are not convincing and do not diminish the testimony or statements of plaintiff or his mother. For example, the ALJ made much of the fact that while plaintiff and his mother indicated that his anti-seizure medication made him drowsy, he appeared alert at the administrative hearing and was able to participate in a lengthy consultative examination. (Tr. at 24.) However, plaintiff's statement in the record that he often skips his morning medication went unmentioned by the ALJ. (Tr. at 141.) The court also notes that while the ALJ's questioning of plaintiff and his mother was somewhat terse[7], the mother's written statement in the form of a function report was quite detailed, complete and articulate. (Tr. at 160-67.)

The ALJ's decision regarding plaintiff's testimony and the testimony and statements of the third-party witness is not supported by substantial evidence in the record. Therefore, plaintiff is entitled to summary judgment on his claim that the ALJ failed to properly credit plaintiff's testimony and the third-party testimony of his mother as to the nature and extent of plaintiff's functional limitations.

/////

/////

---

[7] For instance, upon establishing that plaintiff had worked as a dietary aid, the ALJ inquired "Why can't you work as a dietary aide now?" and made the same inquiry with respect to the job of groundskeeper. (Tr. at 37-38.)

13

**III. Step Four Determination of Residual Functional Capacity to Perform Past Work**

Plaintiff's final argument is that the ALJ erroneously found him capable of performing his past work as a janitor due to improper assessment of plaintiff's RFC, failure to credit the testimony of the vocational expert in response to the hypothetical question which accurately reflected plaintiff's limitations, and failure to ask the vocational expert whether his testimony conflicted with the Dictionary of Occupational Titles.

This final argument of plaintiff is in large part based upon the ALJ's treatment of Dr. Brooker's opinion as well as his treatment of the testimony and statements of plaintiff and his mother. Above, the court has determined that the ALJ erred in his treatment of that evidence. On remand, the ALJ will be required to reassess plaintiff's RFC by either crediting Dr. Brooker's opinion or more fully developing the record in that regard before reconsidering the evidence using the proper legal standards. In light of the required remand, the court does not address plaintiff's argument that the ALJ erred in basing his decision on the opinion of a vocational expert given in response to an incomplete hypothetical question that did not accurately reflect plaintiff's condition. The record is not sufficiently developed for consideration of this argument at the present time. See Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir. 1994). If the sequential evaluation proceeds to step five on remand, the ALJ shall hold a new hearing at which plaintiff is permitted to testify and hypothetical questions are presented to a vocational expert in a manner that properly takes into account all of the limitations on plaintiff's ability to engage in work-related functions.[8]

---

[8] With respect to plaintiff's argument that the ALJ failed to ask the vocational expert whether his testimony conflicted with the Dictionary of Occupational Titles (DOT), the court notes that the ALJ is required to so inquire, on the record. SSR 00-4P, 2000 WL 1898704, at *2 (Dec. 4, 2000.) If there is a conflict, the ALJ must resolve it by determining whether the vocational expert's explanation for the conflict is reasonable and justifies reliance on the expert's testimony rather than on the DOT information. The Ninth Circuit has joined three other Circuits in holding that the ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT. Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007). However, the Ninth Circuit qualified that holding, noting that the failure to make the requisite inquiry is harmless where

**CONCLUSION**

The court will remand the matter for further administrative proceedings consistent with this order. See Widmark v. Barnhart, 454 F.3d 1063, 1065 (9th Cir. 2006) (reversing and remanding for proceedings consistent with the court's decision that the ALJ improperly rejected an examining physician's opinion). The court notes that this is a case with few medical records and no opinions from treating sources.[9] Remand is required so that the ALJ can, if appropriate, develop the record by obtaining any new opinions by an examining psychologist who qualifies as an acceptable medical source. Remand is also required so that the ALJ can reconsider Dr. Brooker's opinions and either credit the limitations assessed by Dr. Brooker or articulate proper

/////

/////

/////

/////

---

there is no conflict or where the vocational expert's testimony provides sufficient support to justify any potential conflict. Massachi, 486 F.3d at 1154 n.19 (failure to follow SSR 00-4p would have been harmless if there had been no conflict between the opinion and DOT); Renfrow v. Astrue, 496 F.3d 918, 921 (8th Cir. 2007) ("[T]he ALJ's error in failing to ask the vocational expert about possible conflicts between his testimony and the Dictionary of Occupational Titles was harmless, since no such conflict appears to exist."); see also Florence v. Astrue, No. EDCV 08-0883-RC, 2009 WL 1916397, at *9, n.12 (C.D. Cal. July 1, 2009); Lenocker v. Astrue, Civil No. 07-1742-ST, 2009 WL 1227731, at *12 (D. Or. May 5, 2009); Miller v. Astrue, No. Civ S-08-368 KJM, 2009 WL 800227, at *4 (E.D. Cal. Mar. 25, 2009); Lao v. Astrue, No. Civ. S-06-2714 EFB, 2008 WL 3863698, at *11-12 (E.D. Cal. Aug. 18, 2008).

[9] While it is the claimant's burden to prove that he or she is disabled, it is well established that the ALJ has a duty throughout the proceedings "to fully and fairly develop the record and to assure that the claimant's interests are considered." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). See 20 C.F.R. §§ 404.1512(e). Rather than proceeding as a "mere umpire" at the administrative hearing, the ALJ has an independent duty to fully develop the record, even where the claimant is represented by counsel. De Lorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991) (the ALJ's duty to develop the record is present even if claimant is represented by counsel); Brown, 713 F.2d at 443 (where the ALJ feels that more evidence, or more reliable evidence, is necessary, the ALJ has a duty to fully and fairly develop the record, even when claimant is represented by counsel). The ALJ's duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

reasons for rejecting those limitations.[10]  Finally, on remand the ALJ shall credit the testimony of plaintiff and his mother or articulate proper reasons for finding their testimony not fully credible.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's February 17, 2009 motion for summary judgment (Doc. No. 18) is granted;

2. Defendant's March 23, 2009 cross-motion for summary judgment (Doc. No. 19) is denied;

3. The decision of the Commissioner of Social Security is reversed; and

4. This case is remanded for further proceedings consistent with this order.

DATED: September 30, 2009.

*Dale A. Drozd*
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

Ddad1/orders.socsec/hutnick1171.order

---

[10] The record in these areas has not been thoroughly developed and further administrative proceedings will allow for that development.  See Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir. 1994) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").